# In the United States Court of Federal Claims

No. 10-708 C
(Filed under Seal: December 2, 2010)
(Reissued for Publication: December 14, 2010)*
TO BE PUBLISHED

|  |  |  |
|---|---|---|
| | ) | |
| HARRIS PATRIOT HEALTHCARE | ) | Competition in Contracting Act |
| SOLUTIONS, LLC, | ) | ("CICA"), 31 U.S.C. § 3553(d); |
| | ) | Automatic Stay; Override of CICA Stay; |
| Plaintiff, | ) | Mootness; Voluntary Cessation Doctrine; |
| | ) | Ripeness; Agency's Corrective Action; |
| v. | ) | GAO Dismissal of Protest as Academic; |
| | ) | Scope of Agency's Duty to Maintain |
| THE UNITED STATES, | ) | "Status Quo" Pending Challenge to |
| | ) | Award; Government Furnished |
| Defendant, | ) | Equipment; Government Furnished |
| | ) | Information; Stay of Action; Retention of |
| and | ) | Jurisdiction. |
| | ) | |
| STANLEY ASSOCIATES, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

Daniel R. Forman, Crowell & Moring LLP, Washington, D.C., for plaintiff.  Thomas P. Humphrey, Puja Satiani, and Peter J. Eyre, Crowell & Moring LLP, Washington, D.C., of counsel.

Anuj Vohra, Trial Attorney, Brian M. Simkin, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington D.C., for defendant.  Jim Weiner, Assistant Solicitor, United States Department of the Interior, Washington, D.C., of counsel.

Scott M. McCaleb, Wiley Rein LLP, Washington, D.C., for defendant-intervenor.  Nicole J. Owren-Wiest and Jon W. Burd, Wiley Rein LLP, Washington, D.C., of counsel.

---

* This Opinion and Order was originally filed under seal on December 2, 2010, pursuant to the protective order entered in this action on October 20, 2010 (docket entry 19).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the protective order.  The parties filed a Joint Report (docket entry 61) on December 13, 2010, proposing certain redactions, which the Court has adopted.  Accordingly, the Court is reissuing its Opinion and Order dated December 2, 2010, with the agreed redactions indicated by three consecutive asterisks within brackets ([***]).

## OPINION AND ORDER

GEORGE W. MILLER, Judge

In this post-award bid protest, plaintiff Harris Patriot Healthcare Solutions, LLC ("Harris") filed its complaint on October 18, 2010, protesting defendant's failure to immediately comply with the automatic stay imposed by the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d) (2006).  Plaintiff sought to enjoin the Department of the Interior ("DOI") from permitting defendant-intervenor Stanley Associates, Inc. ("Stanley") to continue work on an awarded task order.  Compl. ¶ 1 (docket entry 1, Oct. 18, 2010).  One day after this action was commenced, DOI implemented the CICA stay by issuing a stop-work order to Stanley. Defendant filed a motion to dismiss plaintiff's complaint on October 27, 2010 on mootness grounds.  Defendant's Motion to Dismiss and Opposition to Plaintiff's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction (docket entry 30, Oct. 27, 2010) ("Def.'s Mot.").  After defendant filed its motion to dismiss, DOI decided to take corrective action in response to Harris's protest filed October 4, 2010 at the Government Accountability Office ("GAO").  As a result, GAO dismissed Harris's protest as academic on November 2, 2010.

At this time, the parties tentatively agreed that defendant's actions had rendered plaintiff's action moot.  During discussions on filing a stipulation of dismissal, defendant clarified that, during the pendency of the corrective action, DOI would not permit Stanley to perform work under the protested task order; however, DOI would *not* forfeit the ability to have Stanley or another company perform work covered by the task order using a different contractual vehicle in order "to meet its immediate and short term needs."  Transcript of November 12, 2010 Hearing at 8 (docket entry 49, filed Nov. 16, 2010) ("Nov. 12 Tr.").  Unsatisfied that DOI had reserved the right to have work covered by the task order performed in the future to meet "immediate and necessary needs," *id.* at 14, Harris announced that it contended the case was *not* moot.  *See* Transcript of October 29, 2010 Status Conference at 12-13 (docket entry 40, filed Nov. 4, 2010) ("Oct. 29 Tr."); Plaintiff's Response to Defendant and Defendant-Intervenor's Motions to Dismiss and Supplemental Memorandum in Support of Motion for Preliminary Injunction at 1 (docket entry 46, Nov. 10, 2010) ("Pl.'s Resp.").

On November 3, 2010, defendant filed a renewed motion to dismiss, again contending that the action was moot.  Defendant's Renewed Motion to Dismiss (docket entry 34) ("Def.'s Renewed Mot.").  Stanley also filed a motion to dismiss on mootness and ripeness grounds. Stanley's Motion to Dismiss (docket entries 35 & 36, Nov. 3, 2010) ("Stanley's Mot.").  The parties participated in a hearing on these motions on November 12, 2010.  For the reasons set forth below, defendant's renewed motion to dismiss and defendant-intervenor's motion to dismiss are **GRANTED**.[1]

---

[1]  Along with its complaint, plaintiff filed an application for a temporary restraining order ("TRO") and motion for preliminary injunction.  Application for TRO (docket entry 6, Oct. 18, 2010); Motion for Preliminary Injunction (docket entry 5, Oct. 18, 2010); *see also* Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Application for TRO and Motion for Preliminary Injunction (docket entry 9, Oct. 18, 2010) ("Pl.'s Mem.").  At the hearing

I.      **Background**

        *A.      The CONNECT System Follow-On Contract*

        Harris was awarded a contract in 2008 by the Acquisition Services Directorate ("AQD"), a part of the DOI, for the development and maintenance of the CONNECT software system.[2] Compl. ¶ 6; Pl.'s Mem. at 3.  The CONNECT software system is an inter-agency federal initiative linking the Government, healthcare providers, and hospitals in the development of "an open source software solution that supports health information exchange," and creation of "standards and governance to make sure that health information exchanges are compatible with other exchanges being set up throughout the country."  CONNECT Community Portal, *What is CONNECT?*, http://www.connectopensource.org/about/ what-is-CONNECT (rev. 2010).

        Harris's contract was set to expire in March 2010, but DOI issued a sole-source bridge contract extending Harris's contract until September 24, 2010.  Declaration of Tony Galluscio ¶ 8 (docket entry 10, Oct. 18, 2010) ("Galluscio Decl.").  This bridge contract permitted Harris to continue work on the CONNECT system pending a competition for the CONNECT follow-on contract.  Sole-Source Bridge Request for Quote ("RFQ") at 1, *attached as* Ex. 1 to Pl.'s Mem.; Galluscio Decl. ¶ 9; Def.'s Mot. at 2.[3]  DOI issued a request for quotation on August 11, 2010, "to continue the ongoing development of CONNECT."  Follow-On RFQ Statement of Work ("SOW") at 1, *attached as* Ex. 4 to Pl.'s Mem.[4]  The task order award was to be made on a best

---

on defendant and defendant-intervenor's motions to dismiss on November 12, 2010, the Court **DENIED** plaintiff's application from the bench because plaintiff had failed to demonstrate a likelihood of success on the merits, and also failed to satisfy the three other criteria for interlocutory relief.  *See* Nov. 12 Tr. at 99; November 12, 2010 Order at 1 (docket entry 47); *see also FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

    [2] AQD is authorized to conduct procurements for the DOI, as well as various other civilian and military agencies.  *See* Acquisition Services Directorate, *About Us*, http://www.aqd.nbc.gov/About/AboutUs.aspx (rev. Nov. 2010).   The procurement at issue in this case was undertaken on behalf of the Department of Health and Human Services ("HHS") Office of the National Coordinator ("ONC") for Health Information Technology, Federal Health Architecture ("FHA") Program Office.  Def.'s Mot. at 2 n.1.  Following the parties, the Court will refer to the relevant procuring agency as the DOI.

    [3] DOI exercised an option in June 2010, extending the bridge contract to September 19, 2010, Sole-Source Bridge Contract RFQ, Ex. D at 2.  DOI extended it again from September 19 through September 24.  *Id.* Ex. E at 3.

    [4] The Court refers to the task order awarded to Stanley and protested by Harris at the GAO as the "follow-on RFQ" or "follow-on CONNECT contract."   Harris's bridge contract that existed between March 2010 and September 24, 2010 is referred to as Harris's "sole-source bridge contract" or more generally as "the bridge contract."  The further bridge contract DOI unsuccessfully attempted to enter into after it awarded the follow-on RFQ to Stanley, discussed further *infra*, is referred to as the "transition bridge contract."

value basis to an awardee that would be responsible for the continued "development of the CONNECT solution to adhere to standards and to meet the business needs of the Federal partners for health information exchanges."  Follow-On RFQ SOW at 3.

      B.     *Award to Stanley and Harris's Request for Debriefing*

     DOI received two quotations, one from Harris and one from Stanley.  Award Notice at 1, *attached as* Ex. 5 to Pl.'s Mem.  Although Harris's quote was nearly [***] less than Stanley's, "Harris's technical quote was not rated as highly as Stanley Associates' technical quote."  Basis for Award Decision at 2, *attached as* Ex. 10 to Pl.'s Mem.  Thus, DOI determined that Stanley's proposal offered the best value to the Government "due to its higher technical [rating] and slightly higher price" and awarded the task order to Stanley on September 24, 2010.  *Id.*  Harris requested a debriefing.  In response, the DOI sent Harris a two-page letter on October 4, explaining that Harris was not selected despite its lower price because of Stanley's superior technical rating.[5]  Basis for Award Decision at 1-2.

      C.     *Transition Work*

     Meanwhile, on the day of the award to Stanley, which was also the day Harris's bridge contract was set to expire, DOI advised Harris that it wished to "extend [Harris's bridge contract] for 60 days for transition" to Stanley.  Administrative Record ("AR") Tab 1 at 1 (docket entry 29, Oct. 27, 2010) (E-mail from Shelita Saint-Louis of AQD to Harris (Sept. 24, 2010, 7:26 PM)); *Id.* at 2-8 (Bridge Transition SOW); Galluscio Decl. ¶ 15.  DOI provided Harris with a statement of work that charged Harris with, "developing an effective transition plan" to Stanley and continuing operation of the CONNECT system during the transition period.  AR Tab 1 at 2-3.

     DOI required Harris to submit a transition plan proposal within two working days, or "no later than Monday, September 27 at 3:00 PM EST."  AR Tab 1 at 1.  On September 27, Harris wrote to the agency requesting a three-day extension, until "close of business Friday October 01, 2010."  AR Tab 2 at 9 (Letter from Vance Rowland of Harris to Shelita Saint-Louis of AQD (Sept. 27, 2010)).  The contracting officer granted Harris an extension until September 28, but explained that no further extension would be granted because DOI wanted to use Fiscal Year 2010 money to fund the transition contract.[6]  AR Tab 2 at 10 (E-mail from Shelita Saint-Louis of AQD to Harris (Sept. 27, 2010, 4:19 PM)).

     On September 28, Harris sent another letter to the contracting officer stating: "We only ask consideration for our business processes to allow us to submit our response with appropriate levels of review and approval as indicated in our letter yesterday."  AR Tab 3 at 12 (Letter from Vance Rowland of Harris to Shelita Saint-Louis of AQD at 1 (Sept. 28, 2010)).  Harris received

---

     [5] Plaintiff was not actually entitled to a formal "debriefing" because the procurement was conducted under FAR Part 8, which only requires "a brief explanation of the basis for the award decision."  FAR § 8.405-2(d).

     [6] For the federal government, the fiscal year "begins on October 1 of each year and ends on September 30 of the following year."  31 U.S.C. § 1102.

no "further communication from DOI regarding the transition work."  Galluscio Decl. ¶ 20.
Defendant asserts that DOI was unable to extend Harris's deadline because DOI did not receive a
proposal from Harris in time to fund the contract with FY 2010 money.  Def.'s Mot. at 3.

>D.     *DOI's Request That Harris Return Government Furnished Equipment*

Because DOI did not receive a transition quote, it declined to offer Harris a contract for
transition work.  Def.'s Mot. at 3.  DOI then orally and thereafter in writing requested that Harris
return to DOI all government furnished equipment ("GFE") and government furnished
information ("GFI") in its possession pursuant to the 2008 contract and the bridge contract.  E-
mail from Shelita Saint-Louis of AQD to Harris (Oct. 15, 2010, 5:29 PM), *attached as* Ex. 12 to
Pl.'s  Mem.  On October 18, 2010, plaintiff sought "clarification and guidance" regarding the
means and timing for  the return of GFE and GFI.  Letter from Vance Rowland of Harris to
Shelita Saint-Louis of AQD at 1-2 (Oct. 18, 2010), *attached as* Ex. 13 to Pl.'s Mem.

Plaintiff expressed particular concern about returning certain GFE and GFI that plaintiff
believed [***].  Galluscio Decl. ¶¶ 32-36.  Plaintiff's task order quote [***] based on Harris's
already possessing this GFE and GFI.  Harris claims it [***] if it is required to transfer the GFE
and GFI back to the Government.  *Id.* ¶ 37.  Harris asserts that returning the GFE and GFI to the
Government would alter the status quo and disadvantage Harris competitively in any re-
evaluation of the quotations.  *See* Nov. 12 Tr. at 68-69 ("[***]").

As of the hearing on November 12, 2010, DOI continued to request that Harris return
certain GFE and GFI to the Government.  *See id*; E-mail from Shelita Saint-Louis of AQD to
Harris ¶¶ 1, 3 (Oct. 28, 2010 1:21 PM), *attached as* Ex. 16 to Pl.'s Resp. (requesting that Harris
return "[***] . . . to" the Government's designated representative, "Mr. [***] of the MITRE
Corporation.").  However, according to Harris, DOI had not, as of the date of the hearing,
required it to return the "[***]," and this GFE/GFI "remains in Harris'[s] possession."  Pl.'s
Resp. at 23-24.

>E.     *Harris's GAO Protest*

On October 4, 2010, the day Harris received DOI's response to its request for a
debriefing, Harris filed a protest of the award to Stanley at the GAO.  *See Harris Patriot
Healthcare Solutions, LLC*, B-404136.1 (Oct. 4, 2010); Galluscio Decl. ¶ 21.  Plaintiff contends
that on October 8, 2010, counsel for DOI asserted that by failing to submit a timely proposal for
the transition work, "Harris had walked off the job and was not willing to perform."  Pl.'s Mem.
at 8.  Plaintiff also contends that because of this perceived failure on Harris's part, upon the
filing of its protest at GAO, DOI stated that it "intended to move forward with the override" of
the automatic stay provided for by 31 U.S.C. § 3553(d).  *Id.*  In response, Harris submitted a
letter to DOI that same day stating that "[t]here should be no confusion.  Harris is willing and
able to continue to perform the CONNECT contract services as it has for the past 2 ½ years."
AR Tab 9 at 34.

>F.     *DOI's Initial Plan to Override the CICA Stay*

DOI received notice of Harris's GAO protest of the award of the follow-on CONNECT
contract to Stanley on the same day it was filed.  AR Tab 5 at 18.  Following discussions with

HHS personnel at the Office of the National Coordinator ("ONC") for Health Information
Technology, DOI initially determined that it would seek to override the CICA stay pursuant to §
3553(d)(3)(C), on the ground that an override was "in the best interests of the United States."
AR Tab 10 at 40-46 (Initial Draft of Determination and Finding ("D&F")).[7]  In its draft D&F,
DOI described in detail how a stay of performance would disrupt and delay the goals of the
CONNECT program.[8]

     During the time DOI continued to draft its D&F, Stanley continued to perform under the
the follow-on CONNECT contract as the awardee.  AR Tabs 12-14; Nov. 12 Tr. at 5.  By
October 15, 2010, the lawyers at DOI appeared ready to "sign off" on the proposed D&F so that
the head of the procuring activity could execute the final D&F.  AR Tab 12 at 78.  However,
DOI postponed promulgation of the final D&F until the following Monday, October 18, 2010, in
order to permit final revisions.  AR Tab 12 at 81.

---

[7] Section 3553(d)(3)(C) provides:

     (C) The head of the procuring activity may authorize the performance of
the contract (notwithstanding a protest of which the Federal agency has notice
under this section)—

     (i) upon a written finding that—

          (I) performance of the contract is in the best interests of the United
          States; or

          (II) urgent and compelling circumstances that significantly affect
          interests of the United States will not permit waiting for the
          decision of the Comptroller General concerning the protest; and

     (ii) after the Comptroller General is notified of that finding.

     The statute contemplates that after receiving notice of the GAO protest, the agency will
"*immediately* direct the contractor to cease performance under the contract."  31 U.S.C.
§ 3553(d)(3)(A)(ii) (emphasis added).  Performance may continue *only if* the responsible head of
the procuring activity makes a "written finding" that performance is in the best interest of the
United States or of urgent and compelling circumstances "*and after the Comptroller General is
notified of that finding.*"  *Id.* § 3553(d)(3)(C)(i) & (ii) (emphasis added).  DOI, however, knew of
the GAO protest on October 4, permitted Stanley to perform under the follow-on CONNECT
contract while DOI was drafting its D&F, and did not issue the statutorily required stop-work
order until October 19, one day after Harris filed this action.

[8] [***].

G.      Harris's Lawsuit in this Court

       1.      Initial Status Conference and DOI's Assurance of Compliance with the
            CICA Stay

On October 18, 2010, plaintiff filed the pending action.[9]  Compl. ¶ 1.  Plaintiff alleged that what it believed to be DOI's decision to override the automatic stay was arbitrary and capricious.  *Id.* ¶ 41.  Plaintiff argued that the DOI had the viable alternative of extending Harris's bridge contract and failed to consider that alternative to overriding the stay.  *Id.* ¶ 43.  Further, plaintiff claimed that DOI could not "show that any significant adverse consequences would arise if it respected the CICA stay," that DOI "failed to meaningfully evaluate the risks and costs to the agency if GAO were to sustain Harris'[s] protest," and the adverse impact of an override "on competition and the integrity of the procurement system."  *Id.* ¶¶ 42, 44, 45.  Finally, plaintiff asserted that it was "ready, willing, and able" to perform if the agency determined that a bridge contract with Harris was a suitable alternative to overriding the CICA stay during the pendency of Harris's GAO protest.  Transcript of October 19, 2010 Status Conference at 13 (docket entry 26, filed Oct. 21, 2010) ("Oct. 19 Tr.").

On October 19, 2010, the Court conducted an initial status conference with the parties.  At the start of the status conference, counsel for defendant announced that DOI had that day issued a stop-work order to Stanley in recognition of the CICA stay.[10]  Oct. 19 Tr. at 6, 20-22; *see also* AR Tab 14 at 126 (signed and acknowledged stop-work order).  However, DOI had not yet determined what course of action it would take with respect to the possibility of a potential future "partial override" of the CICA stay to permit work on what counsel described as certain very specific tasks critical to maintaining the CONNECT network.  Oct. 19 Tr. at 18; *see also id.* at 23-24 ("[A] partial override specifically would allow Stanley as the awardee to perform only those specific tasks under the task order that were immediately necessary . . . for the continuity of service.") (statement of counsel for defendant).

By the time defendant responded to plaintiff's motion for interlocutory relief on October 27, DOI had decided that it did not "intend to override the stay *at all*."  Def.'s Mot. at 10 (emphasis in original); Declaration of Shelita Saint-Louis ¶ 7 (Oct. 27, 2010) ("Saint-Louis Decl."), *attached as* Ex. A. to Def.'s Mot. ("After consulting with ONC regarding its immediate needs, ONC now advises that it does not need to override the automatic stay and will not need to do so during the pendency of Harris'[s] GAO protest.  In light of HHS'[s] re-evaluation of its needs, *DOI does not intend to override the automatic CICA stay prior to the completion of the GAO protest.*") (emphasis added).

---

     [9] Stanley filed an unopposed motion to intervene on the side of defendant in the case on October 19, 2010 (docket entry 15), which the Court granted.  Order at 1 (docket entry 18, Oct. 20, 2010).

     [10] The administrative record filed by defendant provides no explanation for the agency's change of position between October 18, 2010, when it was ready to obtain the requisite signature on the final D&F, and October 19, 2010, when it decided to issue the stop-work order and re-evaluate its position.

2.      Corrective Action in Response to Harris's GAO Protest

Subsequently, on October 28, 2010, DOI submitted a letter to GAO indicating that it intended to take corrective action in response to the allegations made by Harris in its protest. Letter from DOI to Lynn H. Gibson, General Counsel, GAO at 2 (Oct. 28, 2010), *attached as* Ex. B to Def.'s Renewed Mot.  DOI outlined the steps it intended to take as corrective action and stated that "during the pendency of the corrective action, the stay of performance of the [CONNECT] Solution 2010 contract shall remain in place."  Letter from DOI to Lynn H. Gibson, General Counsel, GAO at 2 (Oct. 29, 2010) ("Revised Corrective Action Letter"), *attached as* Ex. C to Def.'s Renewed Mot.  In light of DOI's representation that it intended to take corrective action, GAO dismissed Harris's protest as academic on November 2, 2010. *Harris Patriot Healthcare Solutions, LLC*, B-404136.1, Decision (Nov. 2, 2010), *attached as* Ex. D to Def.'s Renewed Mot.

DOI has affirmed that it has no present intent to have Stanley or any other company perform work covered by the follow-on CONNECT contract during the pendency of DOI's corrective action.  Nov. 12 Tr. at 8-9.  However, in response to plaintiff's inquiry, DOI stated that it could not give a binding assurance that it would not permit Stanley or some other entity to perform work covered by the follow-on CONNECT contract using some alternative contractual vehicle in order to "meet its immediate and short term needs."  Nov. Tr. at 8 ("[DOI does] not intend to utilize Stanley via a separate contractual vehicle during the pendency of th[e] corrective action period, but . . . the Agency could not, and was not willing to relinquish its rights to utilize any available means to meet immediate needs that might arise during the pendency of th[e] corrective action."); *see also* Oct. 29 Tr. at 16.  In the absence of such an assurance, plaintiff contended, the case was *not* moot.  Pl.'s Resp. at 15.

**II.     The Court No Longer Possesses Jurisdiction Over Plaintiff's Action Because Plaintiff's Claims Are Either Moot or Unripe**

This court possesses jurisdiction to review an agency's override of the CICA stay pursuant to 28 U.S.C. § 1491(b)(2) because the decision whether to override the CICA stay is agency action "in connection with a procurement."  *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("Where an agency's actions under a statute so clearly affect the award and performance of a contract, this court has little difficulty concluding that that statute has a 'connection with a procurement.'").  However, the Court's review of the override decision is limited and does not involve review of the underlying protest before the GAO. *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 710 (2006).

Defendant and defendant-intervenor move to dismiss plaintiff's action for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") because of three events that they claim have rendered this action moot: (1) DOI's issuance of a stop-work order to Stanley on October 19, 2010; (2) GAO's dismissal of Harris's protest as academic because of DOI's decision to undertake corrective action; and (3) DOI's representation that the stay of performance of the follow-on CONNECT contract will remain in effect "during the pendency of the corrective action."  Def.'s Renewed Mot. at 8; Stanley's Mot. at 3; Defendant's Reply in Support of Its Renewed Motion to Dismiss at 6 (docket entry 51, Nov. 19, 2010) ("Def.'s Reply"); *see also* Revised Corrective Action Letter at 2.  The burden rests with

defendant to demonstrate that an action is moot.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., (TOC) Inc.*, 528 U.S. 167, 190-92 (2000) (contrasting mootness with standing and holding that defendant bears the burden to demonstrate mootness because of the potential for "sunk costs" to the judicial system in cases where the court possessed jurisdiction initially only to have the case subsequently dismissed as moot); *see also Alexander v. United States*, 52 Fed. Cl. 710, 713 (2002); *Nat'l Med. Enters., Inc. v. United States*, 11 Cl. Ct. 329, 332 (1986).

     A.     *Plaintiff Is Not Entitled to an Order Requiring DOI to Maintain the "Status Quo" After Dismissal of Plaintiff's GAO Protest*

     1.     <u>Plaintiff's Original Request for Relief is Now Moot</u>

The mootness doctrine is one of several justiciability doctrines originating from the "case or controversy" requirement of Article III of the Constitution.[11]  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Additionally, while "subsequent acts may moot a request for particular relief or a count, the constitutional requirement of a case or controversy may be supplied by the availability of other relief."  *Intrepid v. Pollock*, 907 F.2d 1125, 1131 (Fed. Cir. 1990).

Although defendant's burden is a "heavy" one, *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979), the Government has met its burden in this case.  There is no doubt that the equitable relief originally requested by plaintiff is moot.  Plaintiff's complaint sought to enjoin DOI from permitting Stanley to continue performance of the awarded task order and a declaration that "DOI's override decision is invalid and has no effect."  Compl. at 13.  On October 19, 2010, DOI issued a stop-work order to Stanley, and DOI never made an "override decision."  Thus, there is no override the court could declare invalid or enjoin.  *See Eskridge Research Corp. v. United States*, 92 Fed. Cl. 88, 93-94 (2010).

     2.     <u>Plaintiff is Not Entitled to an Order Requiring DOI to "Maintain the Status Quo"</u>

After DOI represented that it intended to take corrective action and after GAO dismissed Harris's protest, plaintiff argued that the Court should require DOI to "maintain the status quo" while the agency undertook corrective action.  Pl.'s Resp. at 17.  Relying on dicta from the district court's decision in *Dairy Maid Dairy, Inc. v. United States*, 837 F. Supp. 1370 (E.D. Va. 1993), plaintiff argued that the Court should order the DOI to "maintain the status quo . . . *during the time required for compliance with the GAO's decision.*"  Pl.'s Resp. at 19 (quoting *Dairy*

---

[11] The Court of Federal Claims is established under Article I of the Constitution, 28 U.S.C. § 171(a), and is not bound by the "case or controversy" requirement of Article III. *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996).  This court has, however, applied the Article III justiciability doctrines for prudential reasons.  *See Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The Court of Federal Claims, though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III.") (internal citations omitted).

*Maid*, 837 F. Supp. at 1385) (emphasis supplied by plaintiff).  However, this argument is based on an overly-broad reading of CICA.

CICA precludes an agency from permitting performance by the awardee "while the protest is pending."  31 U.S.C. § 3553(d)(3)(B).  The CICA stay was intended to prevent an agency from allowing performance of a protested contract during GAO's consideration of a protest because such performance could well place the protester at a disadvantage.  Pl.'s Resp. at 18; *see also* H. REP. NO. 98-1157 at 24 (1984); *Dairy Maid*, 837 F. Supp. at 1377 (observing that "Congress enacted CICA, and incorporated the stay provisions here at issue, in an attempt to provide effective and meaningful review of procurement challenges before the protested procurement[]" becomes a *fait accompli*) (citing *Ameron Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 878 (3d Cir. 1986)).  When DOI announced it intended to take corrective action and GAO dismissed Harris's protest as academic, Revised Corrective Action Letter at 2; *Harris Patriot Healthcare Solutions, LLC*, B-404136.1, Decision (Nov. 2, 2010), that dismissal removed a prerequisite to CICA's automatic stay—the pendency of a GAO protest.

Given the fact that dismissal of the GAO protest ended the automatic stay of performance of the follow-on CONNECT contract, it is unclear what relief plaintiff would be entitled to in order to "maintain the status quo."  The relief that plaintiff sought in its protest at GAO was a re-evaluation of DOI's award decision taking into account plaintiff's allegations.[12]  But DOI is now taking corrective action in response to plaintiff's GAO protest, agreeing to investigate the

---

[12] At the GAO, plaintiff alleged that the agency failed to take into account a potential Organizational Conflict of Interest ("OCI") because a former employee of ONC had since been employed by one of Stanley's subsidiaries.  Pl.'s Mem. at 8.  Plaintiff also alleged that that the agency conducted a "flawed evaluation of non-price factors and [made an] unreasonable source selection decision."  *Id.*  In its Corrective Action, DOI has agreed to:

- . . . undertake a review of the facts and circumstances on which Harris bases its allegations of unfair competitive advantage and unmitigated OCIs to determine whether awardee Stanley could have been afforded an unfair competitive advantage.  The contracting officer will then determine what actions, if any, should be taken to address the appearance of impropriety, if any.

- . . . review all evaluations and, as appropriate, . . . revise the evaluations of the proposals submitted.

- [make a] new best value determination . . . .

- If Stanley remains the successful offeror, performance of the contract previously awarded will proceed.  If a different contractor is selected, Stanley's contract will be terminated for convenience and a new contract will be awarded.

Revised Corrective Action Letter at 2.

grounds on which plaintiff based its protest.  Moreover, DOI has committed to maintain the stay of performance of the follow-on CONNECT contract during the pendency of the corrective action.  Revised Corrective Action Letter at 2.  Therefore, DOI has provided Harris with the relief it would have been entitled to if the CICA stay had remained in effect. [13]

3.     The Court Declines to Order the Agency to Permit Harris to Retain the GFE/GFI

Next, plaintiff argues that its action is not moot because Harris seeks an order precluding DOI from requiring the return of the GFE and GFI.  Pl.'s Resp. at 29-30.  Plaintiff contends that requiring the return of GFE/GFI would [***].  *Id.* at 24-25.  Further, "requiring the return of the GFE/GFI while the corrective action is on-going is illogical and an unnecessary drain on the public fisc at a time of great economic strain."  *Id.* at 25; *see also* Nov. 12 Tr. at 86 (stating that prohibiting the Government from requiring "the return of the GFE" would "provide frankly all the relief" plaintiff requires) (statement of counsel for Harris).

Defendant, however, states that Harris's obligation to return the GFE and GFI is an obligation imposed by the now-expired bridge contract, which incorporated FAR § 52.245-1.  Sole-Source Bridge RFQ Ex. B. at 8; Nov. 12 Tr. at 15; *see also* Def.'s Reply at 9 ("[T]he Government is well within its rights to request the return of *its own property* for purposes of closing out Harris'[s] now-expired contract.") (emphasis in original).  That provision, entitled "Government Property," permits the Government at any time, upon written notice, to "[w]ithdraw authority to use [the] property."  FAR § 52.245-1(d)(3)(i)(C).  Defendant thus argues that it has a contractual right to require the return of the GFE/GFI.  Def.'s Reply at 9. The Court agrees.

To the extent that Harris were to conclude in the future that returning the GFE/GFI had unfairly affected DOI's evaluation of Harris's proposal, Harris could protest the award decision. [14]  Finally, although plaintiff's argument regarding the public fisc may turn out to have

---

[13] To the extent that *Dairy Maid* suggests that the court may require DOI to enter into the transition bridge contract with Harris, that decision is contrary to binding precedent of the Federal Circuit and therefore not helpful to plaintiff.  *See Parcel 49C Ltd. P'ship v. United States,* 31 F.3d 1147, 1152-53 (Fed. Cir. 1994); *C.A.C.I., Inc.-Fed. v. United States*, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983); *see also Durable Metals Prods., Inc. v. United States,* 27 Fed. Cl. 472, 476-77 (1993) ("[T]he equitable jurisdiction of this court does not include the authority to award a contract as plaintiff requests."), *aff'd*, 11 F.3d 1071 (Fed. Cir. 1993) (unpublished table opinion).

[14] Harris asserted at oral argument that certain statements in the administrative record indicate that DOI has prejudged the claims made by Harris in its GAO protest.  Nov. 12 Tr. at 69 (referring to "statement[s] in the government's record, where they basically have done an assessment of [plaintiff's] protest, and concluded that there is no merit."); *see also* AR Tab 6 at 23 (E-mail from Anand Basu of ONC to Marc Weisman and Doug Fridsma of ONC (Oct. 5, 2010, 11:50 AM)) ("In no way did [the individual named in Harris's GAO protest regarding an alleged OCI] have any involvement with the source selection plans for the CONNECT

merit, this Court's bid protest jurisdiction does not allow the Court to second guess the agency's discretionary decisions regarding contract management.[15]  *See Gov't Technical Servs. LLC v. United States*, 90 Fed. Cl. 522, 527 (2009) (holding that Contract Disputes Act is the "exclusive mechanism" for resolution of disputes regarding contract management).

### 4.    The Voluntary Cessation Doctrine Is Inapplicable

The agency's issuance of a stop-work order would not necessarily be enough to moot plaintiff's action because "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Friends of the Earth*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see also Parents Involved in Cmty. Schols v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007); *Unisys Corp. v. United States*, 90 Fed. Cl. 510, 517 (2009).  If a defendant's voluntary cessation of challenged conduct could always render a case moot, defendant would be "free to return to [its] old ways" and resume the conduct in question once the case was dismissed.  *Friends of the Earth*, 528 U.S. at 189 (quoting *City of Mesquite*, 455 U.S. at 289 n.10).  Nonetheless, defendant's "voluntary cessation" of the challenged practice can render an action moot if defendant "can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'"[16]  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945) (L. Hand, J.)).

Again, while "[t]he burden is a heavy one," *id.*, defendant has adequately shown that there is no reasonable expectation that DOI's violation of the CICA stay will be repeated because there is no longer any CICA stay in effect.  *See* Nov. 12 Tr. at 30 ("Here there can be no

_____

requirement."); *id.* ("[***]").   Any alleged pre-judgment could also be protested *if* DOI's corrective action ends unfavorably for Harris and *if* Harris decides to protest DOI's action.

[15] Defendant argues, and the administrative record seems to confirm, that the return of the GFE would not drain the public fisc because in the follow-on CONNECT contract, DOI has identified a third-party, not the eventual awardee, to "perform the hosting requirements for which the GFE and GFI is necessary."  Def.'s Reply at 9.  Thus, it appears that the GFE and GFI will be transferred to a third party regardless of the result of DOI's corrective action.  *Id.* at 9 & n.7; *see also* E-mail from Shelita Saint-Louis of AQD to Harris ¶¶ 1, 3 (Oct. 28, 2010 1:21 PM), *attached as* Ex. 16 to Pl.'s Resp. (identifying MITRE Corp. as the "Government's designated representative" to receive the GFE/GFI).

[16] Counsel for Harris stated at oral argument that "[t]he government bears the burden . . . of showing that it is *absolutely clear* that there is no reasonable chance that some disruption to the status quo is not likely to return."  Nov. 12 Tr. at 49 (emphasis added).  Harris's proposed standard of absolute clarity appears to impose an even heavier burden than the standard prescribed by the Supreme Court.  Even applying Harris's suggested standard, however, DOI has made a sufficient showing to establish with absolute clarity that there is no reasonable chance that DOI's past violations of CICA will recur.  The voluntary cessation doctrine is therefore inapplicable.

reasonable expectation that the alleged violation, the allegedly wrongful behavior, could be expected to [recur] . . . [because] there is no CICA stay to either ignore or to override. The stay no longer exists.") (statement of counsel for Stanley). Plaintiff overstates the agency's obligations under CICA when it argues that the case is not moot because "the risk that the Government will again disrupt the status quo is clear and substantial." Pl.'s Resp. at 16.

 CICA does not preclude *every* alteration to the status quo; DOI's obligation under CICA is narrower. In this case, DOI has agreed to re-evaluate the quotations of Stanley and Harris in light of the allegations made in Harris's GAO protest. And DOI has stated that it intends to investigate each of Harris's allegations. It has also represented that the stay of performance of the follow-on CONNECT contract will remain in place during the pendency of DOI's corrective action. Any action the agency may take during or as a result of its corrective action would likely constitute a separate procurement decision that Harris could seek to challenge in an appropriate forum. However, the Government's voluntary cessation of performance during the pendency of DOI's corrective action and statements of Government counsel regarding DOI's lack of any present intention to request that Stanley or any other contractor perform tasks covered by the follow-on CONNECT contract are sufficient to show, with the requisite clarity, that there is no reasonable expectation that DOI's past violations of CICA will be repeated.

> B.     *Any Challenge to DOI's Conduct in Taking Corrective Action Is Not Ripe For Review*

Plaintiff next argues that there remains a live controversy because DOI may be setting itself up to be able to allow Stanley to perform tasks covered by the follow-on CONNECT contract through some contracting vehicle *other than* the follow-on CONNECT contract. *See* Revised Corrective Action Letter at 2 (confirming "that, during the pendency of the corrective action, the stay of performance *of the [CONNECT] Solution 2010 contract* shall remain in place.") (emphasis added). Plaintiff argues that the Court should "enjoin[] the Government during the pendency of the corrective action process . . . from allowing Stanley to perform tasks covered by the CONNECT Solution 2010 Solicitation . . . either under the awarded contract or any other contract." Pl.'s Resp. at 29-30. Putting aside the presumption of good faith that the Government is afforded when it undertakes corrective action, *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007), plaintiff's theory runs afoul of another justiciability doctrine: ripeness.

"[T]he ripeness doctrine . . . prevent[s] . . . courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."[17] *Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Agency action is ripe for review when it (1) "marks 'the consummation of the agency's decisionmaking process,' *i.e.*, it [is] not . . . merely tentative or interlocutory" and

---

[17] Unlike mootness, it is plaintiff's burden to establish ripeness. *Morris v. United States*, 58 Fed. Cl. 95, 97 (2003) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

(2) it is one that determines "rights or obligations" or is one "from which legal consequences will flow." *NSK Ltd. v. United States*, 510 F.3d 1375, 1385 (Fed. Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177 (1997)). This court has recognized in similar contexts that "[a] claim is not ripe where it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Eskridge*, 92 Fed. Cl. at 94 (quoting *Tex. Bio & Agro-Def. Consortium v. United States*, 87 Fed. Cl. 798, 804 (2009)); *see also Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 658 (2003).

Plaintiff's suspicions about DOI's future actions are simply too speculative to create a ripe controversy. In *Madison Services, Inc. v. United States*, 90 Fed. Cl. 673, 676 (2009), the plaintiff filed a protest in this court challenging the Federal Emergency Management Agency's "expressed intention" to follow the recommendation of the GAO in a previous bid protest. The Government moved to dismiss on the ground that the agency had not yet definitively determined whether and how to implement GAO's recommendation. *Id.* at 677. After the motion to dismiss had been fully briefed, the Government filed a renewed motion to dismiss informing the court that the underlying procurement had been cancelled. *Id.*

Like the plaintiff in *Madison Services,* Harris "cannot avoid dismissal by speculating as to what [DOI] *might* do." *Id.* (emphasis added); *see also Forestry Surveys & Data v. United States*, 44 Fed. Cl. 485, 492 (1999) (declining to grant relief regarding agency's potential use of past performance ratings in awarding future contracts because "no action can be maintained regarding future, and at this point speculative, contracts"). As *Madison Services* further demonstrates, speculation as to what the agency *might* do cannot give rise to a ripe controversy because the agency can decide to pursue a different course of action, as it did in *Madison Services* by cancelling the solicitation altogether.

Indeed, plaintiff is arguably in a worse position than the plaintiff in *Madison Services* because its concern is not only speculative, but also *contradicted* by Government counsel's representation that DOI has no present intention of permitting Stanley or any other contractor to perform tasks covered by the follow-on CONNECT contract under that contract or *any other contractual vehicle.* Nov. 12 Tr. at 6-8. If future circumstances lead the DOI to change its mind in order to "meet its immediate and short term needs," *id.* at 8, plaintiff may at that point seek to challenge DOI's action in an appropriate forum. *See id.* at 25 ("[DOI] would have a right to explain the basis for wanting to utilize Stanley or someone else, and this Court would then have an opportunity to . . . review . . . that action, and determine its propriety, as well as weigh any harm that Harris would suffer as a result of that usage, and any harm that the government might suffer by being enjoined from using it, and where the public interest lies.") (statement of counsel for defendant). But until the agency acts in a way that is not "merely tentative or interlocutory," *NSK, Ltd.*, 510 F.3d at 1385, this court may not adjudicate plaintiff's unripe claims.

C.    *The Court Declines to Stay Proceedings and Lacks Authority to Retain Jurisdiction Pending Future Developments*

Plaintiff alternatively requests that the Court stay proceedings and retain jurisdiction over this action "to ensure that Harris has an opportunity for a bid protest remedy." Pl.'s Resp. at 31.

Plaintiff fears that DOI may elect to contract using a vehicle "arguably insulated from traditional bid protest review, separate and apart from the override issues before this Court."[18] *Id.*

Although plaintiff may be correct that future action by the DOI could leave it without a forum to hear its bid protest, such an outcome would be the result of the interplay of statutes regulating federal government procurement enacted by Congress at different times. The jurisdictional limitations that might prevent challenges to agency action in this court would remain applicable whether or not proceedings in this case were stayed. Plaintiff's concerns about the limitations Congress has imposed on this Court's jurisdiction over bid protests do not provide a basis for this Court's retaining jurisdiction and do not present a "pressing need for [a] stay" of proceedings in this case. *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

Moreover, the requirement that the parties be involved in a live dispute—*i.e.*, one that is neither moot nor unripe—is a fundamental prerequisite to the court's jurisdiction, namely, the requirement of a justiciable controversy. *See Massachusetts v. Envtl. Protection Agency*, 549 U.S. 497, 516 (2007); *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (discussing the Supreme Court's development of "various more specific but overlapping doctrines rooted in the same Article III inquiry, which must be met for a controversy to be justiciable, including standing, ripeness, and a lack of mootness"). Staying the case while retaining jurisdiction is simply not an option because, having found that plaintiff's claims are either moot or unripe, the Court has no jurisdiction to hear them, and "*must* dismiss the action." RCFC 12(h)(3) (emphasis added); *see also Chapman Law Firm*, 490 F.3d at 939-40 (after a finding that the action was moot, "the Court of Federal Claims should have dismissed the case").

## CONCLUSION

For the foregoing reasons, defendant and defendant-intervenor's motions to dismiss pursuant to RCFC 12(b)(1) are **GRANTED**. Plaintiff's action is **DISMISSED** without prejudice on grounds of mootness and because Harris's claims regarding conduct that may occur during the implementation of corrective action or at some other future time are not ripe for resolution by

---

[18] For example, if DOI issued a task order to Stanley valued at $10 million or less, neither GAO nor (arguably) this court would have jurisdiction because of the passage of the Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, 108 Stat. 3243 (1994) (codified as amended at 10 U.S.C. § 2304c(e) and 41 U.S.C. § 253j). *See A&D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126 (2006); *see also Delex Sys., Inc.*, B-400321, 2008 CPD ¶ 154, 2008 WL 3112559, at *2 (Comp. Gen. Aug. 5, 2008) (dismissing GAO protest of task order valued under $10 million). *But cf. Idea Int'l, Inc. v. United States*, 74 Fed. Cl. 129, 137 (2006) ("FASA's prohibition on bid protests does not cover GSA Federal Supply Schedule orders."); Matthew Chow, Tara L. Ward, Amy Bryan & Theodore Richard, Bench Memorandum: *Court of Federal Claims Task Order Bid Protest Jurisdiction and Expectation Damages*, 38 PUB. CONT. L.J. 975, 998-99, 1010-11 (2009) (arguing that the Court of Federal Claims could potentially exercise jurisdiction over a protest of a task order "valued in excess of $10 million" based on an alleged breach of the implied contract to consider proposals fairly and honestly).

the Court at this time.  The Clerk is directed to enter judgment for defendant consistent with the foregoing.

Some information contained herein may be considered protected information subject to the protective order entered in this action on October 20, 2010 (docket entry 19).  This Opinion and Order shall therefore be filed under seal.  The parties shall review the opinion to determine whether, in their view, any information should be redacted in accordance with the terms of the protective order prior to publication.  The Court **FURTHER ORDERS** that the parties shall file, by **Monday, December 13, 2010**, a joint report identifying the information, if any, they contend should be redacted, together with an explanation of the basis for each of their proposed redactions.

**IT IS SO ORDERED.**

s/ George W. Miller
GEORGE W. MILLER
Judge